<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER BERNDT,<br><br>      Plaintiff,<br><br> v.<br><br>HEYCO PRODUCTS CORPORATION,<br><br>      Defendant. | Civil Action No. 22-01300 (GC) (TJB)<br><br>**MEMORANDUM OPINION** |

<u>**CASTNER, District Judge**</u>

  This matter comes before the Court on Plaintiff Jennifer Berndt's Motion to Remand to New Jersey Superior Court, pursuant to 28 U.S.C. § 1447(c), this employment retaliation action brought under the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 *et seq*. ("CEPA"). (ECF No. 6.)  Defendant Heyco Products Corporation opposed (ECF No. 11), and Plaintiff replied (ECF No. 12).  The parties also filed supplemental briefing (*see* ECF Nos. 17, 18) in response to the Court's Order (ECF No. 16).  The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure ("Rule") 78 and Local Civil Rule 78.1.  For the reasons set forth below, and other good cause shown, Plaintiff's Motion to Remand is **DENIED**.

**I.  BACKGROUND**

  Plaintiff, a New Jersey resident, is a former employee of Defendant, Heyco Products Corporation ("Heyco" or "Defendant").  (ECF No. 1, Ex. A ("Compl.") ¶¶ 4, 52.)  Defendant is a Delaware corporation that produces molded wire protection products.  (*Id.* ¶ 7; ECF No. 11-1,

Declaration of Colleen Faulknor ("Faulknor Decl.") ¶ 7.)  From March 2, 2020 to July 16, 2021, Plaintiff was employed as a machine operator at Defendant's manufacturing facility in Toms River, New Jersey.  (Compl. ¶¶ 6, 10, 52.)  During her employment, Plaintiff reported various safety issues and complaints to her supervisor and other management employees of Defendant.  (*See, e.g.*, *id.* ¶¶ 23, 29, 32-35, 42-43, 46, 48, 50-51.)  On July 16, 2021, Defendant informed Plaintiff that her employment was terminated.  (*Id.* ¶ 52.)

On February 3, 2022, Plaintiff filed a one-count complaint against Defendant in New Jersey Superior Court, alleging that Defendant, by terminating her employment, took retaliatory action against Plaintiff for making repeated complaints about workplace safety.  (Compl. ¶¶ 54-69.)  Such retaliation, the Complaint alleges, was in violation of CEPA.  The Complaint does not state a specific amount of damages.  Instead, the Complaint states that Plaintiff "seeks compensatory and non-compensatory damages against Defendant, together with costs and mandatory attorneys' fees, and such other legal and equitable relief from Defendant as the Court deems just and proper."  (Compl. at 15)

Defendant filed a notice of removal on March 10, 2022, pursuant to 28 U.S.C. § 1441, based on diversity jurisdiction and an amount in controversy exceeding $75,000.  (*See* ECF No. 1.)  Defendant argued that inclusion of punitive damages or attorney's fees in Plaintiff's demand would result in an amount in controversy in excess of $75,000.  (*Id.* ¶ 8.)  Plaintiff moved to remand this matter to state court on the grounds that there is no diversity of citizenship and that Defendant has not shown that the amount in controversy exceeds $75,000.  (*See* ECF No. 6.)

The Court ordered the parties to file supplemental submissions on Plaintiff's Motion to Remand.  (ECF No. 16.)  The parties timely filed their respective submissions.  (*See* ECF Nos. 17, 18.)

## II.     LEGAL STANDARD

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants to the district court." Removal of a suit from state to federal court is proper only if the federal court to which the action is removed would have had original jurisdiction over the matter. *Entrekin v. Fisher Scientific, Inc.*, 146 F. Supp. 2d 594, 603-04 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)). To maintain subject matter jurisdiction over a lawsuit, the Court must either have diversity jurisdiction, 28 U.S.C. § 1332, or federal question jurisdiction, 28 U.S.C. § 1331. A federal district court has diversity jurisdiction over all civil actions where all plaintiffs are diverse from all defendants and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a).

Remand is governed by 28 U.S.C. § 1447(c), which states that whenever subject-matter jurisdiction is absent, the district court must remand the case to the state court upon either motion or *sua sponte*. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."). On a motion to remand, the removing party asserting federal jurisdiction bears the burden of satisfying all aspects of federal jurisdiction. *See Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007). That is, the party seeking removal must establish that (1) federal subject matter jurisdiction exists, (2) removal was timely filed, and (3) removal was proper. 28 U.S.C. §§ 1441, 1446, 1447; *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). Federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396, 403 (3d Cir. 2004); *Boyer*, 913 F.2d at 111 (citations omitted).

## III. DISCUSSION

Plaintiff argues that this action must be remanded because this Court lacks subject matter jurisdiction. First, Plaintiff asserts that there is no diversity of citizenship, because Defendant's principal place of business is in New Jersey, not Pennsylvania. Second, Plaintiff argues that Defendant has failed to demonstrate that the amount in controversy is over $75,000.

### A. Diversity of Citizenship

Diversity jurisdiction "requires complete diversity of the parties; that is, no plaintiff can be a citizen of the same state as any of the defendants." *Grand Union Supermarkets of V.I., Inc. v. H.E. Lockhart Mgmt., Inc.*, 316 F.3d 408, 410 (3d Cir. 2003). In any case resting on diversity jurisdiction, the Court must determine for itself whether every defendant is completely diverse from the plaintiff. *See Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 394 (3d Cir. 2016) (quoting *Grand Union Supermarkets of the V.I.*, 316 F.3d at 410). For purposes of diversity jurisdiction, a corporation is a citizen of both the state of its incorporation and the state in which it has its principal place of business, or where its "nerve center" is located. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 91-92 (2010). Importantly, "[t]he burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it." *Hertz*, 559 U.S. at 96. The removing party must demonstrate diversity of citizenship by a preponderance of the evidence. *See McCann v. Newmann Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006).

Here, it is undisputed that Defendant is a corporation incorporated under Delaware laws. (*See* Faulknor Decl. ¶ 7; ECF No. 6-2 at 5,[1] ¶ 9.) However, the parties dispute where Defendant's principal place of business is located. Plaintiff argues that Defendant's principal place of business

---

[1] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

4

is New Jersey, not Pennsylvania. (ECF No. 6-2 at 6.) And because Plaintiff is domiciled in New Jersey, she disputes that complete diversity exists in this case. (Compl. ¶ 4.) Specifically, Plaintiff asserts that Defendant's parent company, Penn Engineering & Manufacturing Corp ("Parent Company" or "Penn Engineering"), a New Jersey corporation — not Defendant — has connections to Pennsylvania.[2] Plaintiff argues that Defendant has one location, which is in Toms River, New Jersey, from which it makes operational decisions and conducts its manufacturing activities. (ECF No. 6-2 at 5.)

A corporation's principal place of business, or "nerve center," is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92-93. A corporation may only have one nerve center. *See id.* at 93 ("A corporation's 'nerve center,' usually its main headquarters, is a single place."). Normally, the corporate nerve center is the corporate headquarters, but only where "the headquarters is the actual center of direction, control, and coordination." *Id*. at 93. The corporate nerve center is "not simply an office where the corporation holds its board meetings." *Id*. Nor can it be proven by "the mere filing of a form like the Securities and Exchange Commission's Form 10-K listing a corporation's 'principal executive offices.'" *Id.* at 97.

Defendant, as the party asserting diversity jurisdiction, has the burden of establishing by "competent proof" that its principal place of business is in Dansboro, Pennsylvania. *See Hertz*, 559 U.S. at 96. In its opposition papers, Defendant offers several facts in support of this contention. Defendant first asserts that its payroll department and other critical administrative functions operate out of Dansboro, Pennsylvania. (Faulknor Decl. ¶¶ 9, 10.) In addition, since

---

[2] In 2016, Defendant was acquired by Penn Engineering, whose principal place of business is in Dansboro, Pennsylvania.

2016, three of Defendant's executives, its President, Vice President, and Secretary, work out of Defendant's Dansboro location.  (*Id.* ¶ 11; *see also* Faulknor Decl., Ex. A.)  Finally, Defendant submits a copy of its corporate filing with the Secretary of State of New Jersey listing the Dansboro address as its main business address and as the address for its three executive officers.  (ECF No. 11 at 14; Faulknor Decl., Ex. A.)

The Court does not find persuasive Plaintiff's arguments that Defendant's principal place of business is in New Jersey.  Initially, Plaintiff argued primarily that Defendant, before its acquisition by Penn Engineering in 2016, solely operated out of Toms River, New Jersey.  (ECF No. 6-2 at 8.)  Plaintiff also contended that, after becoming a subsidiary of Penn Engineering, Defendant continued to operate as an independent company out of its sole location in Toms River, New Jersey, not Penn Engineering's corporate headquarters in Dansboro, Pennsylvania.  (*Id.*)  Plaintiff alleged that Defendant's human resource department, including Colleen Faulknor, Vice President of Administration, operates out of Toms River.  (ECF No. 12 at 5.)  Further, Plaintiff took issue with Faulknor's Declaration, which she alleged fails to claim that major business and strategic decisions are made in Dansboro and that board meetings occur in Dansboro.  (*Id.*)

Defendant's supplemental papers rebutted nearly all of Plaintiff's assertions.  By declaration of Elliot Israel, Heyco's Corporate Secretary and Treasurer, Defendant clarified that its corporate headquarters are in Danboro, Pennsylvania; that "[f]rom the beginning of Heyco's existence through present, human resources has operated mainly out of Danboro, Pennsylvania"; and, perhaps most critically, that "[m]ajor policy determinations and decisions regarding the core operations of Heyco's business, including all Board of Directors activity and decision making, as well as mergers and acquisition decisions emanate from Danboro, Pennsylvania."  (ECF No. 17-1 ("Israel Decl.") ¶¶ 10-11, 15.)  In her own supplemental filing, Plaintiff admittedly offers no

additional information to counter Defendant's supplemental papers; Plaintiff only asserts that Defendant has not met its burden of demonstrating to a "legal certainty" the propriety of removal and that any doubt should be resolved in favor of remand. (ECF No. 18.) Such assertions do not cast doubt on the "competent proof" submitted by Defendant to establish its principal place of business.

Plaintiff's remaining support, which relates solely to Penn Engineering, fares no better. (*See, e.g.*, ECF No. 6-4, Exs. C-D.) This information is not relevant to establishing Defendant's citizenship. It is Defendant's nerve center, not Penn Engineering's, that is at issue. It is well-established that a parent corporation maintains separate citizenship from a subsidiary unless it has exerted such an overwhelming level of control over the subsidiary that the two companies do not retain separate corporate identities. *Quaker State Dyeing & Finishing Co. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1142 (3d Cir. 1972). Here, the record evinces no such level of overwhelming control by Penn Engineering over Defendant. Thus, Plaintiff's arguments with respect to Penn Engineering have no bearing on where Defendant's principal place of business is.

Based on Defendant's competent proof and Plaintiff's inability to cast doubt on such proof, the Court concludes that Defendant has met its burden of establishing that its principal place of business is in Dansboro, Pennsylvania.

### B. Amount in Controversy

Turning to the amount in controversy requirement, Plaintiff argues that diversity jurisdiction is lacking here because her complaint does not allege an amount in controversy in

excess of $75,000 and Defendant fails to offer any evidentiary support that her claim exceeds $75,000. (ECF No. 6-2 at 4.[3])

"In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Samuel-Bassett*, 357 F.3d at 398. In addition to the complaint, courts may consider the notice of removal and both parties' briefings related to the motion to remand. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205 n.12 (3d Cir. 2003) (stating that jurisdictional facts required to support removal may be found in later-filed affidavits). Where the complaint does not include a specific monetary demand, the removing defendant need only "plausibl[y] alleg[e]" the amount in controversy. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). In making this determination, the Third Circuit applies the legal-certainty test set forth in *Samuel-Bassett*. 357 F.3d at 398. Under the legal-certainty test, if the "plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," the case "must be remanded if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount." *Frederico*, 507 F.3d at 197 (directing courts to apply *Samuel-Bassett* in cases where plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum); *see also Raspa v. Home Depot*, 533 F. Supp. 2d 514, 522 (D.N.J. 2007) (same).

A determination on the amount in controversy also requires a "reasonable reading of the value of the rights being litigated." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993). Accordingly, the question whether there is a legal certainty that Plaintiff's claim is for less than

---

[3] Plaintiff also argues that because her complaint does not specify that punitive damages are sought, Defendant erroneously included such damages for the purpose of calculating amount in controversy. (ECF No. 6-2 at 4.)

$75,000 depends on what damages Plaintiff could conceivably recover under the applicable New Jersey statute, CEPA.

A prevailing plaintiff in a CEPA action is entitled to "[a]ll remedies available in common law tort actions." *Longo v. Pleasure Prods., Inc.*, 215 N.J. 48, 57 (2013) (citing N.J. Stat. Ann. § 34:19-5). The statute explicitly permits compensatory damages, attorneys' fees, and punitive damages. N.J. Stat. Ann. § 34:19-13 (granting courts the ability to award the following damages to any prevailing employees bringing suit alleging violations of CEPA: (1) "payment of any lost wages benefits or other renumeration", (2) "payment of reasonable attorneys' fees and costs of the action", and (3) "punitive damages not greater than treble damages, or an assessment of a civil fine of not more than $1,000 for a first violation of the act and not more than $5,000 for each subsequent violation").

Here, Plaintiff does not attach a dollar figure to her claim in her complaint. (Compl. at 18.) Nor does the Complaint limit its request for damages to a precise monetary amount less than the amount in controversy. Therefore, under the legal-certainty test, "unless it appears to a legal certainty that the plaintiff was never entitled to recover the jurisdictional amount," the amount in controversy requirement would be satisfied. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 151 (3d Cir. 2009) (citing *Frederico*, 507 F.3d at 197).

Defendant argues that the amount in controversy exceeds $75,000, because Plaintiff seeks a broad range of damages recoverable under CEPA, including compensatory damages, non-compensatory damages, attorneys' fees, and "such other legal and equitable relief from Defendant as the Court deems just and proper." (ECF No. 1 ¶ 8; Compl. at 15.) On the other hand, Plaintiff does not state or stipulate in the Complaint or in her briefing that the amount in controversy is less than $75,000. Instead of offering any calculations of her own, Plaintiff argues that Defendant's

9

calculations and arguments as to amount in controversy are speculative, without evidentiary support, and are insufficient to meet its burden of establishing jurisdiction. (ECF No. 6-2 at 7.)

The Court will review each type of damage recoverable to Plaintiff. First, Plaintiff seeks compensatory damages in her complaint. CEPA permits an award of compensatory damages, such as payment of lost wages benefits or other renumeration. According to Defendant, at the time of Plaintiff's termination of employment on July 16, 2021, she was earning $17.74 per hour, or approximately $33,362 per year.[4] (Faulknor Decl. ¶ 4.) A court evaluates the amount in controversy as of "the time that the complaint was filed," *Auto-Owners Ins. Co.*, 835 F.3d at 395, or, in the case of removal, "as of the date of removal," *Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999). Thus, any award of lost wages as a result of Plaintiff's termination, measured from July 16, 2021 to March 10, 2022, would only be for approximately two-thirds of a year, or approximately $22,241. Alone, this amount is insufficient to satisfy the amount in controversy requirement.

Second, although the request for relief in the Complaint seeks non-compensatory damages, it fails to expressly request punitive damages. Plaintiff does not clarify in her initial papers or supplemental filing whether her complaint includes a claim for punitive damages. Still, even where plaintiffs do not specifically plead a demand for punitive damages, this absence is not necessarily a bar to an eventual award. *LoRocco v. New Jersey Mfrs. Indem. Ins. Co.*, 197 A.2d 591, 595 (N.J. Super. Ct. App. Div. 1964).

Even if Plaintiff's request for non-compensatory damages includes punitive damages, the Court next considers whether Plaintiff's request for punitive damages may be aggregated with

---

[4] Israel's declaration states that Plaintiff was earning $16.74 per hour. (Israel Decl. ¶ 4.) This does not affect the Court's analysis.

compensatory damages when calculating the amount in controversy. For purposes of calculating amount in controversy, claims for punitive damages may be aggregated with claims for compensatory damages unless they are "patently frivolous and without foundation." *Golden ex rel. Golden v. Golden*, 382 F.3d 348, 355 (3d Cir. 2004). "If appropriately made, therefore, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of plaintiff's claim is below the statutory minimum." *Id.*

Here, for the purpose of determining whether the amount in controversy requirement is met, the Complaint pleads insufficient facts establishing the requisite elements necessary to sustain a claim for punitive damages under CEPA. Under CEPA, Plaintiff can be awarded punitive damages of up to three times the compensatory damages. N.J. Stat. Ann. § 34:19-13. Punitive damages may be awarded pursuant to CEPA when (1) the conduct is especially egregious, *Leimgruber v. Claridge Assocs.*, 73 N.J. 450, 454 (1977); and (2) there is actual participation by upper management or willful indifference, *Abbamont v. Piscataway Twp. Bd. of Educ.*, 138 N.J. 405, 419 (1994). Here, the Complaint pleads facts relating to the involvement of Colleen Faulknor, Vice President of Administration, in Plaintiff's termination. (Compl. ¶¶ 33-34, 42-44, 48-50, 52-53.) Plaintiff does not, however, allege any egregious conduct or intentional wrongdoing by Faulknor or any other individuals that may be members of upper management. Without such allegations, Plaintiff would not be entitled to an award of punitive damages under CEPA even if she were to prevail in this case. Accordingly, the amount of punitive damages may not be aggregated with compensatory damages in determining the amount in controversy.

Third, and finally, because Plaintiff seeks attorneys' fees, which are available to prevailing plaintiffs under CEPA, N.J. Stat. Ann. § 34:19-13, the Court may also consider them to determine

the amount in controversy. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *Frederico*, 507 F.3d at 199; *Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc.*, 245 Fed.Appx. 161, 163 n.2 (3d Cir. 2007) (citations omitted) ("[W]hen state law provides for the recovery of attorneys' fees by a successful plaintiff, those fees must be considered in calculating the jurisdictional amount in controversy."). "Although 28 U.S.C. § 1332 excludes 'interest and costs' from the amount in controversy, attorney's fees are necessarily part of the amount in controversy if such fees are available to successful plaintiffs under the statutory cause of action." *Suber*, 104 F.3d at 585 (citation omitted). Neither party has presented any evidence or calculations with respect to the amount of attorneys' fees potentially recoverable here. As a result, the Court will not attempt to estimate Plaintiff's likely attorneys' fees in this case. *See, e.g.*, *Zanger v. Bank of Am., N.A.*, Civ. No. 10-2480, 2010 WL 3910142, at *5 (D.N.J. Oct. 1, 2010).

Taking Plaintiff's allegations and her request for compensatory damages, non-compensatory damages, and attorneys' fees, the Court cannot say to a legal certainty that Plaintiff could never recover more than $75,000 if she prevails. Thus, it is plausible that the value of her claim exceeds the jurisdictional amount such that remand is not appropriate at this time. *See, e.g.*, *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 782 n.2 (3d Cir. 2020).

IV.  **CONCLUSION**

For the foregoing reasons, and other good cause shown, Plaintiff's Motion to Remand (ECF No. 6) is **DENIED**. An appropriate Order follows.


Dated: June 22, 2023              *s/ Georgette Castner*
                                  GEORGETTE CASTNER, U.S.D.J.